UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TIMOTHY HENDERSON,       )<br>                                                 )<br>            Plaintiff,               )<br>                                                 )<br> v.                                           )<br>                                                 )<br> MASCO FRAMING CORPORATION, )<br>                                                 )<br>            Defendant.           )<br>                                                 ) | 3:11-CV-00088-LRH-RAM<br><br>ORDER |

Presently before the court is plaintiff Timothy Henderson's ("Henderson") joint motion to compel arbitration and for attorney's fees. Doc. #8.[1] Defendant Masco Framing Corporation ("Masco") filed an opposition (Doc. #9) to which Henderson replied (Doc. #12).

Also before the court is defendant Masco's motion for judgment on the pleadings. Doc. #11. Henderson filed an opposition (Doc. #13) to which Masco replied (Doc. #14).

**I. Factual Background**

This action involves alleged violations of the Sarbanes-Oxley ("SOX") Act, breach of contract, breach of the covenant of good faith and fair dealing, and tortious discharge claims arising out of Henderson's involuntary discharge from his employment with Masco.

In May 2007, Masco acquired Henderson's prior employer, the Erickson Companies, where

---

[1] Refers to the court's docket number.

Henderson had been employed for nineteen years. Henderson retained his employment and received a retention bonus, a severance agreement, and stock and investment-related benefits as a result of the acquisition. As part of the retainer agreement, Henderson's retention bonus was to be held in escrow by Masco and distributed to Henderson in three annual installments beginning in December 2007. The agreement allegedly stipulated that the escrow agent would not pay any employer portion of FICA taxes.

In December 2007, Henderson received the first installment of his retention bonus, from which Masco had withheld the employer portion of the FICA Medicare tax and reported this tax amount as income on his W2 tax form. Henderson complained, but Masco insisted that the escrow agreement allowed them to withhold the FICA tax.

In March 2008, the President and Chief Operating Officer of Masco, Rob Brown ("Brown"), verbally promised Henderson a bonus equal to one half of Henderson's annual salary for the years 2008 and 2009. Later that year, in December 2008, Henderson received the second installment of his retention bonus, from which the FICA Medicare tax had again been withheld, but Masco again refused to address Henderson's renewed complaints. Thereafter, Henderson received the promised bonus for 2008.

In August 2009, Henderson was involuntarily dismissed from his employment and received his final retention bonus installment, from which the FICA taxes had again been withheld, but was not paid the promised 2009 bonus.

In September 2009, Henderson filed a complaint with the Occupational Safety and Health Administration ("OSHA") of the Department of Labor and, in January 2010, filed a charge of discrimination against Masco with the Equal Employment Opportunity Commission ("EEOC"). Henderson's EEOC action was eventually dismissed, but his OSHA claim reached the Office of the Administrative Law Judges ("ALJ") and continued until Henderson's motion to stay pending arbitration and/or mediation was granted on September 16, 2010. No mediation or arbitration between Henderson and Masco ever took place.

Subsequently, on February 8, 2011, Henderson filed the instant complaint against Masco, alleging four causes of action: (1) violations of the whistle-blower protection provisions of the SOX Act, (2) breach of contract, (3) breach of the covenant of good faith and fair dealing, and (4) tortious discharge. Doc. #1. Henderson alleges that his termination was an act of retaliation by Masco to punish him for complaining about the FICA tax money that was withheld from his bonus payments. Thereafter, Henderson filed the present motion to compel arbitration and for attorney's fees. Doc. #8

## II. Legal Standard

The Federal Arbitration Act ("FAA"), found at 9 U.S.C. §1 *et seq.*, requires a district court to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. In determining whether to compel arbitration under the FAA, the court must determine whether: (1) there is an agreement between the parties to arbitrate; (2) the claims at issue fall within the scope of the agreement; and (3) the agreement is valid and enforceable. *Lifescan, Inc. v. Permier Diabetic Services, Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

## III. Discussion

In his motion to stay the proceedings and compel arbitration, Henderson argues that the court should compel arbitration because: (1) there is an arbitration agreement between himself and Masco elaborated in Masco's dispute resolution policy; (2) the arbitration agreement applies to the claims in his complaint; and (3) the FAA governs the enforcement of the dispute resolution agreement and its arbitration provisions. *See* Doc. #8.

In its opposition, Masco argues that Henderson's motion should be denied because: (1) the arbitration agreement is invalid on its face, as it was never signed by Henderson; (2) the recent Dodd-Frank Act retroactively bars arbitration of Henderson's SOX claim; and (3) even if the arbitration agreement is valid, Henderson's breach of contract and breach of the covenant of good faith and fair dealing claims should not be submitted for arbitration because the one-year statute of limitations elaborated in that agreement has run. *See* Doc. #9.

**A.  Validity of the Mediation/Arbitration Agreement**

The court must first address whether the dispute resolution policy, and, specifically, the arbitration agreement contained therein, is valid and binding.  The court is unconvinced by Masco's argument, centered around the century-old case of *Tonopah Lumber Co. v. Riley*, 95 P. 1001, 1003 (Nev. 1908), that the policy is not binding as it is "unexecuted," or unsigned.  Initially, the court notes that Masco's synopsis of *Tonopah Lumber*, that an "unexecuted contract is not considered to be a complete or genuine instrument," is a mischaracterization of the holding.  In *Tonopah Lumber*, the contract at issue was not merely unsigned, it was also "incomplete according to its terms" and there was conflicting evidence as to "whether it was . . . the intention of the parties to enter into a contract containing the terms and conditions" of the agreement.  95 P. at 1003.

Further, in contrast to Masco's position, all that is required for the valid formation of a contract under Nevada law is that there be an offer, acceptance, a meeting of the minds, and consideration.  *See  Mack v. Estate of Mack*, 206 P.3d 98, 108 (Nev. 2009).  Whether an agreement was signed or executed is generally not dispositive of the formation of a contract.

Here, the facts establish the existence of a contractual agreement between Henderson and Masco to arbitrate employment claims.  Masco informed Henderson of its dispute resolution policy and its arbitration provisions prior to Masco's acquisition of the Erickson companies.  *See* Doc. #9, Exhibit D (a Management Confidentiality Agreement ("MCA"), signed by Henderson in April 2007, which incorporates the dispute resolution policy into its terms and which explicitly provides that "Employee acknowledges that [he] has had an opportunity to review the [dispute resolution policy].").  Further, the dispute resolution policy itself specifically states that agreement to the policy is "a condition of continued employment."  Doc. #9, Exhibit B.  Thus, although no signed copy of the dispute resolution policy appears to exist, the court finds that Henderson was familiar with the existence of the policy and knew that agreement to its terms was a mandatory condition of his employment.  Henderson's affirmation of the policy in the MCA and his employment with Masco for over two years establish mutual agreement to the terms of the policy.  Thus, the dispute

resolution policy constitutes a valid contract between Henderson and Masco.

### B. SOX and the Dodd-Frank Act

Because the court finds that the arbitration agreement is valid, the court must now consider whether Henderson's claim for alleged violations of the SOX Act falls within the provisions of the agreement. The SOX Act provides protection for whistleblowers, stating that publicly traded companies are prohibited from "discharg[ing], demot[ing]," or otherwise harming or threatening an employee because of a lawful act done by the employee to provide information about company conduct that the employee believes to be unlawful. 18 U.S.C. § 1514A. While SOX claims were arbitrable at the time the law was originally enacted, the recent Dodd-Frank Act, enacted in July 2010, amended Section 1514A to prohibit arbitration of SOX claims. 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if [it] requires arbitration of a dispute arising under this section."). As Henderson is attempting to enforce a dispute resolution policy over a SOX claim, the question before this court is whether Dodd-Frank applies retroactively to arbitration agreements that existed prior to July 2010.

Applying legislative enactments retroactively is typically disfavored. *See Landgraf v. USI Film Products*, 511 U.S. 244, 264 (1994). The Supreme Court has barred the retroactive application of "genuinely" retroactive statutes, but allows certain types of statutes, statutes which do *not* have "genuinely" retroactive effects–such as those that deal with the propriety of injunctive relief, those that address the question of a particular court's jurisdiction, or those that change procedural rules–to be applied in a quasi-retroactive manner. *See id.* at 273-79. A statute has a "genuinely" retroactive effect when its application to previous actions or conduct would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*, at 277, 280. The key question in the instant case, then, is whether the Dodd-Frank Act's updated SOX provisions, contained in Section 922 of the Act, would have a "genuinely" retroactive effect if applied to past conduct. Due to its recent passage, very little case precedent interpreting Dodd-Frank exists. Nevertheless, the parties

5

have presented the court with two non-binding, diametrically-opposed cases supporting their respective positions.

Henderson relies on *Riddle v. DynCorp International Inc.*, 733 F. Supp. 2d 743 (N.D. Tex. 2010), to support his contentions that Dodd-Frank provides an explicit date on which Section 922 would become effective and, therefore, the Act's amendments to SOX arbitration cannot apply retroactively. In *Riddle*, the district court, examining the Dodd-Frank Act's alteration of the statute of limitations for False Claims Act ("FCA") claims, took the "Effective Date" contained in Section 4 of the Act at face value. 733 F. Supp. 2d at 748. Section 4 stated that "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this act." Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111–203, 124 Stat. 1376 (2010). Because no alternative effective date was provided in the section of the Dodd-Frank Act pertaining to FCA claims, the court stated that, based on the "plain language of the Act," it could "only conclude that it was *not* retroactive." *Riddle*, 733 F. Supp. 2d at 748.

In opposition, Masco cites *Pezza v. Investors Capital Corp.,* 2011 WL 767982 (D. Mass. Mar. 1, 2011), to support its contentions that the effective date of Section 922 is ambiguous and that a retroactive application of these provisions is proper. The district court in *Pezza* engaged in a lengthy analysis of the Dodd-Frank Act before determining that, under the plain language of the statute, Congress's intent concerning the retroactivity of Section 922 was unclear. *Id.* at *6. Allegedly acting under the impetus of Supreme Court precedent as elaborated in cases such as *Landgraf*,[2] the court then examined the practical consequences of allowing Section 922 to apply retroactively. *Id.* at *6-8. Asserting that a retroactive application of Section 922 would merely affect the conferral of jurisdiction–a procedural right–rather than the substantive rights of the

---

[2] *See* 511 U.S. at 274 (stating that the Court has "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed").

6

parties, the court held that Section 922 qualifies as just the sort of quasi-retroactive statutory provision that can be applied retroactively because it does not have a "genuine" retroactive effect. *See Id.* at *8

In considering the facts of the instant case and the precedent cited by the parties, this court notes three important points regarding the retroactivity of congressional statutes. First, as has been mentioned above, "[r]etroactivity is not favored in the law." *Landgraf*, 511 U.S. at 264 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Second, for this reason, there is typically a "presumption against statutory retroactivity." *Id.* at 270. Third, "[t]he largest category of cases in which . . . the presumption against statutory retroactivity has [been applied] involve[s] new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 271. Supreme Court precedent has explicitly indicated on numerous occasions that the right of parties to agree to arbitration is a *contractual* matter governed by contract law. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752-53 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).

After reviewing the relevant case law, this court finds that the Dodd-Frank Act's SOX provisions are not retroactive. At the time Henderson and Masco agreed to the dispute resolution policy in 2007, they had the right to contract for the arbitration of SOX claims. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008); *Boss v. Salomon Smith Barney Inc.*, 263 F. Supp. 2d 684, 685 (S.D.N.Y. 2003). Further, Henderson and Masco's right to arbitrate SOX claims was reflected in their agreement, as the dispute resolution policy states that the arbitration provisions apply to "violation[s] of any federal . . . law." Doc. #9, Exhibit B. The court does not see, therefore, how a retroactive revocation of the parties' right to arbitrate SOX claims would *not* "impair rights [the parties] possessed when [they] acted." *Landgraf*, 511 U.S. at 280. A retroactive application of Dodd-Frank's SOX provisions would not merely affect the jurisdictional location in which such claims could be brought; it would fundamentally interfere with the parties' contractual rights and would impair the "predictability and stability" of their earlier agreement. *Id.* at 271. For

these reasons, the court concludes that Henderson's right to arbitrate his SOX claim is not retroactively barred. Accordingly, the court finds that Henderson's SOX claim falls within the provisions of a valid arbitration agreement, and, recognizing the FAA's mandatory enforcement of such valid arbitration agreements, the court shall grant Henderson's motion to compel arbitration.

### C. Remaining Claims

As the court has already found that Henderson's SOX claim is arbitrable under a valid arbitration agreement, the court finds that, in the interest of justice and in order to maximize the efficient use of judicial time and resources, Henderson's remaining claims should also be submitted to arbitration. Therefore, the court shall deny Masco's motion for judgment on the pleadings without prejudice.

## IV. Request for Attorney's Fees

Under the Federal Rules of Civil Procedure, a party may submit a claim for attorney's fees to the court, by motion, no later than fourteen days after the entry of judgment. FED. R. CIV. P. 54(d)(2)(A)-(B)(i). This provision implies that a final judgment on the merits is necessary prior to an award of attorney's fees. The motion for attorney's fees must also typically "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." FED. R. CIV. P. 54(d)(2)(B)(ii).

In the instant case, no judgment has been entered in favor of either party. Further, Henderson has cited no rule or statute justifying an award of attorney's fees. For these reasons, the court finds that Henderson's request for attorney's fees is both untimely and unsupported and, thus, shall deny the request without prejudice.

IT IS THEREFORE ORDERED that plaintiff Timothy Henderson's motion to compel mediation and arbitration (Doc. #8) is hereby GRANTED in part and DENIED in part in accordance with this order. The action is STAYED pending arbitration of Henderson's claims.

IT IS FURTHER ORDERED that Timothy Henderson shall file a notice with the court

upon conclusion of arbitration.

IT IS FURTHER ORDERED that Masco Framing Corporation's motion for judgment on the pleadings (Doc. #11) is hereby DENIED without prejudice.

IT IS FURTHER ORDERED that if no further pleadings are filed in this action within the next thirty (30) days, that the Clerk shall administratively close this file and not reopen it until further order of the court or a notice of conclusion of arbitration is filed. The administrative closing shall be without prejudice to any party.

IT IS SO ORDERED.

DATED this 22nd day of July, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE